DECISION
{¶ 1} Relator, Ricky Thatcher, has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that denied him permanent total disability ("PTD") compensation, and to enter an order granting such compensation.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate found the requested writ of mandamus should be denied because there was evidence to support the commission's finding that, although relator lacks transferable skills to sedentary employment, he is nevertheless not entitled to a PTD award because his age, education, and work history suggest he is capable of performing sustained remunerative employment. No objections have been filed to the magistrate's decision.
 {¶ 3} Upon a review of the magistrate's decision and an independent review of the evidence, this court finds there is no error of law or other defect on the face of the magistrate's decision and adopts it as its own. Therefore, the requested writ of mandamus is denied.
Writ of mandamus denied.
Sadler and Wright, JJ., concur.
Wright, J., retired of the Supreme Court of Ohio, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Ricky Thatcher, : Relator, : v. : No. 04AP-103 Industrial Commission of Ohio : (REGULAR CALENDAR) and J. Carl Lehman, : Respondents. :
 MAGISTRATE'S DECISION Rendered on August 27, 2004 Law Office of Thomas Tootle, and Thomas Tootle, for relator.
Jim Petro, Attorney General, and Kevin J. Reis, for respondent Industrial Commission of Ohio.
Thomas, Fregiato, Myser, Hanson Davies, and Christopher J.Gagin, for respondent J. Carl Lehman.
 IN MANDAMUS {¶ 4} In this original action, relator, Ricky Thatcher, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
Findings of Fact:
 {¶ 5} 1. On July 16, 2001, relator sustained an industrial injury which is allowed for "sprain lumbar region; L4-5 herniated disc," and is assigned claim number 01-427424.
 {¶ 6} 2. On February 24, 2003, relator filed an application for PTD compensation.
 {¶ 7} 3. On May 13, 2003, relator was examined at the commission's request by orthopedist Boyd W. Bowden, D.O. Dr. Bowden reported:
1. It is the feeling of the examiner that the injured worker has reached MMI with regard to his allowed condition of sprain lumbar region, L4-5 herniated disc. It is to be noted that he did have an MRI on 9/27/01 showing a protruding disc both at the L4 disc and L5 disc without canal stenosis. Some mild narrowing of the canal was noted at the L4 level. However, no nerve root involvement was noted.
2. Utilizing the Guides to the Evaluation of Permanent Impairment, 4th Edition, published by the AMA, a DRE Lumbosacral Category II minor impairment is established for this claimant. Throughout the examination guarding was noted in his motions. Lack of forward bending and backward bending as well as side bending was immediately apparent on his examination, thus giving him a 5% whole person impairment.
 {¶ 8} 4. On May 13, 2003, Dr. Bowden completed a physical strength rating form on which he indicated that relator could perform sedentary work.
 {¶ 9} 5. The commission requested an employability assessment report from Michael T. Farrell, Ph.D., a vocational expert. The Farrell report responds to the following query:
Based on your separate consideration of reviewed medical and psychological opinions regarding functional limitations which arise from the allowed condition(s), identify occupations which the claimant may reasonably be expected to perform, immediately and/or following appropriate academic remediation.
 {¶ 10} Indicating acceptance of Dr. Bowden's reports and responding to the above query, Dr. Farrell listed the following "Employment Options":
Referral and information clerk; surveillance system monitor; telephone answering service operator; packager; escort vehicle driver are current options[.]
With on-the-job or some remedial education possibly work as a quality control inspector, assembler, data entry[.]
Under "III. Effects of Other Employability Factors," Dr. Farrell wrote:
1. Question: How, if at all, do the claimant's age, education, work history or other factors (physical, psychological and sociological) effect his/her ability to meet basic demands of entry level occupations?
Answer: Age: The claimant's age of 44 would be considered a positive characteristic in terms of re-employment.
Education: The claimant has a reported 9th grade education and has never obtained a GED. He reports performing math poorly, but being unable to read or write. This would cause moderate to significant limitations in clerical type sedentary positions.
Work History: The claimant has been employed in unskilled labor intensive jobs which would not provide transferability.
* * *
2. Question: Does your review of background data indicate whether the claimant may reasonably develop academic or other skills required to perform entry level Sedentary or Light jobs?
Answer: The claimant in the past has been employed in unskilled positions. He reports a limited academic history and functional illiteracy although this was not documented in the records. The latter would certainly pose difficulty in terms of obtaining entry level clerical type positions and would likely not benefit from rehabilitation/remediation.
3. Question: Are there significant issues regarding potential employ-ability limitations or strengths which you wish to call to the SHO's attention?
Answer: The claimant is a younger person and age would neither affect re-employment or ability to acquire new skills, however, the injured worker reports a limited 9th grade education, has never obtained a GED, and describes himself basically as functionally illiterate. The latter would certainly hamper re-employment. He has in the past, however, engaged in unskilled jobs providing him familiarity of a work situation and has likely demonstrated the ability to follow simple instructions and complete routine tasks. The injured worker has applied for SSDI benefits which may reflect a lack of motivation to return to competitive employment.
Under "IV. Employability Assessment Database," Dr. Farrell wrote:
B. WORK HISTORY:
JOB TITLE * * * SKILL LEVEL STRENGTH LEVEL DATES
Landscape Laborer * * * unskilled medium 1995-2001 Salvager * * * unskilled medium 1992-1995 Laborer * * * unskilled heavy 1977-1986 Tire Changer * * * semi-skilled heavy 1975-1977
C. EDUCATIONAL HISTORY:
Highest Grade Completed: 9th
Date of last attendance: 1974 H.S. Graduate: No GED: No Vocational training: None identified ICO Educational Classification: Limited
 {¶ 11} 6. Following an August 13, 2003 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. The SHO's order states:
This order is based particularly upon the reports of Dr. Bowden and Dr. Farrell.
The claimant is a 45 year old male with a 9th grade education (no GED) and a work history as a tire changer, laborer, salvager and landscape laborer. The claimant sustained his industrial injury on 07/16/2001 when he slipped in a ditch and hurt his low back. The claim was originally allowed for a sprained lumbar region. The claim was subsequently allowed for a L4-5 herniated disc.
All treatment in the claim has been conservative in nature. The claimant last worked on 07/16/2001. He was determined to not be a good candidate for rehabilitation services.
On 05/13/2003, Boyd Bowden, D.O., Orthopedist, conducted an examination of the claimant at the request of the Industrial Commission on the issue of permanent total disability. Dr. Bowden report[ed] that the claimant does yard work, mows his grass, does laundry and drives a car. Dr. Bowden states that the claimant has reached maximum medical improvement and has a 5 percent permanent partial impairment related to the allowed conditions in this claim. Dr. Bowden concludes that the claimant is capable of performing sedentary work.
Michael Farrell, Ph.D., conducted an employability assessment at the request of the Industrial Commission. Dr. Farrell notes that the claimant's age would be a positive factor in terms of re-employment. As previously noted by the Staff Hearing Officer, the claimant has a 9th grade education. However, the claimant states he is unable to read or write, and performs math poorly. Dr. Farrell notes that the claimant's education and diminished reading, writing and math skills would present moderate to significant limitations in clerical type sedentary positions. Based on the claimant's unskilled labor-type background, Dr. Farrell concludes the claimant would have no transferable skills.
Given the claimant's education and work history, Dr. Farrell concludes the claimant would have difficulty obtaining entrylevel sedentary work and would not benefit from rehabilitation/remediation. Dr. Farrell notes, however, that the claimant has previously engaged in unskilled jobs providing him familiarity of a work situation and has demonstrated the ability to follow simple instructions and complete routine tasks. Based on Dr. Bowden's conclusion, Dr. Farrell lists jobs the claimant could be reasonably expected to perform. Such jobs include: referral and information clerk, surveillance system monitor, packager and escort vehicle driver.
The Staff Hearing Officer finds that the claimant's age is a positive factor toward re-employment. He is 45 years old and has many years to seek and obtain employment before he reaches a typical retirement age. In regard to the Stephenson [State exrel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167] factors, this decision turns on the claimant's educ[a]tion, literacy and work history. The claimant states he cannot read or write. The Staff Hearing Officer asked the employer of approximately (8) years, Mr. Lehman, of [sic] he was aware of the claimant's inability to read. Mr. Lehman testified that he had no knowledge of claimant's inability to read. Mr. Lehman testified the [sic] he sometimes left written instructions as to the claimant's job tasks for a given day and the claimant always performed the tasks and never acted as if he could not read. The claimant also occasionally had to read instructions to assemble tools and/or work items.
Again, the claimant never advised the employer that he was unable to read instructions. Although the Staff Hearing Officer does not doubt the claimant has diminished reading skills, based on the above testimony, the Staff Hearing Officer finds that the claimant possesses some ability to read. As to work history, the Staff Hearing Officer finds that the claimant only has experienced [sic] in unskilled heavy labor. He would not have transferable skills. However, the Staff Hearing Officer finds the claimant has demonstrated by his lengthy employment history that he has the ability to obtain and maintain employment, and to learn and follow instructions.
Dr. Bowden indicates the claimant is limited to sedentary work. However, Dr. Bowden records that the claimant does yard work, mows his grass, does laundry and drives a car. A vocational evaluation from MED Solutions dated 11/08/2002, notes the claimant's [sic] occasionally able to go shopping, carry light bags of groceries, and cook. It is also noted that he [sic] for limited amounts of time the claimant can mow grass, rake leaves and work on his car/truck. At hearing, it cam[e] to light that the claimant owns and helps operate a small farm with animals. The claimant testified that he feeds the cows (although his wife noted the tractor lifts the large bales of hay). The claimant stated he drives the tractor. The claimant also testified that he drives around in a truck to keep people from trespassing and he puts water in a pit. The Staff Hearing Officer finds the above activities would demonstrate the claimant may possess the ability to perform more than sedentary work. A functional capacity evaluation was conducted on 10/04/2002. The result of that evaluation showed the claimant was capable of performing medium work. The Staff Hearing Officer finds that the above activities would be consistent with such a finding.
Nevertheless, the Staff Hearing Officer finds that based on the capabilities noted by Dr. Bowden, and considering the claimant's age, education, and work history, the claimant is not temporarily [sic] and totally disabled. The Staff Hearing Officer notes that based on the claimant's education, literacy level and work history, obtaining and learnings [sic] entry level work may not be without some difficulty. However, he is young and has demonstrated the ability to obtain and maintain various jobs. He has a good work history. Therefore, as the Staff Hearing Officer finds the claimant is capable of performing sustained remunerative employment, he is not permanently and totally disabled. The application filed 02/24/2003 is denied.
 {¶ 12} 7. On January 28, 2004, relator, Ricky Thatcher, filed this mandamus action.
Conclusions of Law:
 {¶ 13} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 14} For its threshold medical determination, the commission, through its SHO, exclusively relied upon the reports of Dr. Bowden who found that relator is medically able to perform sedentary work. Relator does not challenge the commission's reliance upon Dr. Bowden's reports nor the commission's finding that relator is medically able to perform sedentary employment; however, relator does challenge an aspect of the commission's consideration of the nonmedical factors.
 {¶ 15} Specifically, relator claims that the commission abused its discretion when it "improperly concluded that relator has transferable skills to sedentary employment." (Relator's brief at 6.) Relator requests that the court issue a writ of mandamus that compels the commission to issue a new order that "specifically details the skills relator possesses that will transfer to sedentary employment." (Relator's brief at 10.)
 {¶ 16} The magistrate disagrees with relator's allegation that the commission concluded that he has transferable skills to sedentary employment. The commission did not abuse its discretion by failing to identify transferable skills that relator was found not to have.
 {¶ 17} Ohio Adm. Code 4121-3-34 sets forth the commission's rules applicable to the adjudication of PTD applications. Ohio Adm. Code 4121-3-34(B) sets forth definitions. Ohio Adm. Code4121-3-34(B)(3)(c)(iv) states:
"Transferability of skills" are skills which can be used in other work activities. Transferability will depend upon the similarity of occupational work activities that have been performed by the claimant. Skills which an individual has obtained through working at past relevant work may qualify individuals for some other type of employment.
 {¶ 18} As the court noted in State ex rel. Ewart v. Indus.Comm. (1996), 76 Ohio St.3d 139, a claimant's lack of transferable skills does not mandate a PTD award. Here, the commission specifically found that relator "would not have transferable skills." In this regard, the commission's order specifically notes: "Based on the claimant's unskilled labor-type background, Dr. Farrell concludes the claimant would have no transferable skills."
 {¶ 19} In short, the commission and Dr. Farrell, upon whom the commission relied, are in agreement that relator lacks transferability of skills.
 {¶ 20} Clearly, the commission properly addressed the transferability of skills issue. Given that the commission found the lack of transferability of skills, it cannot be required to identify skills that transfer to sedentary employment.
 {¶ 21} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 /s/ Kenneth W. Macke
KENNETH W. MACKE MAGISTRATE